UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 14, 2016

LETTER TO COUNSEL

RE:   *Kirsten Glenn v. Commissioner, Social Security Administration*;
      Civil No. SAG-16-0217

Dear Counsel:

On January 22, 2016, Plaintiff Kirsten Glenn petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Glenn filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 15, 2011. (Tr. 186-95). She alleged a disability onset date of June 23, 2011. *Id.* Her claims were denied initially and on reconsideration. (Tr. 66-81, 84-119). A hearing was held on April 4, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 30-58). Following the hearing, the ALJ determined that Ms. Glenn was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 8-26). The Appeals Council denied Ms. Glenn's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Glenn suffered from the severe impairments of "diabetes with neuropathy, retinopathy, and episodes of ketoacidosis and some heart and kidney involvement, moderate obesity, and mild affective, anxiety, and personality disorders." (Tr. 13). Despite these impairments, the ALJ determined that Ms. Glenn retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations: occasional stooping, crouching, kneeling, and climbing stairs, no climbing ladders or scaffolds, no work around unprotected heights or dangerous machinery. She should not perform work that requires driving. She has the ability to fulfill short simple instructions and some detailed but no complex instructions, she is able to respond appropriately to supervisors

> and others in a work environment, and she can adapt to routine work setting changes. She is able, with corrective lenses, to avoid ordinary work hazards (e.g. ajar doors, boxes on a floor, and approaching vehicles and people), she is able to read ordinary newspaper or book size print, and to view a computer screen; however, she can not read very small print.

(Tr. 15-16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Glenn could perform her past relevant work as a data entry clerk and that, therefore, she was not disabled. (Tr. 19-20).

Ms. Glenn raises two primary arguments on appeal: (1) that the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); and (2) that the ALJ failed to properly evaluate the opinion of the treating nurse practitioner. Pl. Mot. 6-13. I concur that the ALJ's opinion is deficient under *Mascio*, and thus recommend remand to allow compliance with that decision. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Glenn is not entitled to benefits is correct or incorrect.

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* at § 404.1620a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See*, *e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* at § 12.00(C).

*Kirsten Glenn v. Commissioner, Social Security Administration*
Civil No. SAG-16-0217
November 14, 2016
Page 3

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*. at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id*. The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In the instant case, the ALJ found Ms. Glenn to have moderate limitations in maintaining concentration, persistence, or pace. (Tr. 15). Notably, the ALJ noted that "[t]he record shows some difficulty in this area, particularly as it pertains to complex instructions." *Id*. The ALJ also noted Ms. Glenn's testimony that "she could have some trouble with spoken instructions," and "can have issues dealing with stress." (Tr. 15, 237-47). However, the ALJ also noted the State agency consultant's determination that Ms. Glenn "would not be significantly limited in her ability to carry out detailed instructions despite some issues with concentration and attention." (Tr. 15, 102-19). As a result, the ALJ limited Ms. Glenn to "short simple instructions and some detailed but no complex instructions." (Tr. 15-16). The ALJ did not address in the RFC assessment, the "issues with concentration and attention and whether they posed any impediment to sustained work.

Ultimately, the ALJ's analysis is simply insufficient to permit adequate review. Without further explanation, I am unable to ascertain whether the ALJ truly believed Ms. Glenn to have moderate difficulties in concentration, persistence, and pace, instead of mild, or no difficulties, and how those difficulties restrict her RFC to "short simple instructions and some detailed but no complex instructions" without further limitation. In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should explain why Ms. Glenn has moderate difficulties in concentration, persistence, and pace, and should impose an appropriate limitation(s) to address

her difficulties. In so holding, I make no finding as to whether the ALJ's ultimate conclusion that Ms. Glenn was not disabled was correct or incorrect.

Ms. Glenn makes the additional argument that the ALJ assigned inadequate weight to the opinion of the treating nurse practitioner, Ms. Stanfill. Pl. Mot. 7-12. As an initial matter, Ms. Glenn concedes that Ms. Stanfill, a certified registered nurse practitioner, is not an acceptable medical source. Pl. Mot. 9. Because a CRNP is not an "acceptable medical source," Ms. Stanfill cannot give a "medical opinion" or be considered a treating source. Social Security Ruling ("SSR") 06-3P. Whether a source is an "acceptable medical source" or not is a factor that may be considered in assigning weight to that source's opinion. *Id.* However, the opinion of a non-acceptable medical source, such as a CRNP, is relevant in determining the severity of an impairment and its impact on an individual's ability to function. *Id.* SSR 06-3P explains that the same factors that apply to evaluating the opinions of medical sources apply to evaluating the opinions of other sources. *Id.*

Contrary to Ms. Glenn's assertion, the ALJ cited a variety of those factors as reasons to discount Ms. Stanfill's evaluation of Ms. Glenn's physical capacity. (Tr. 19). Notably, Ms. Stanfill opined that Ms. Glenn had a number of physical limitations, including a restriction in "climbing, balancing, stooping, bending, kneeling, crawling, pushing/pulling," and limited restriction in "reaching all directions, handling, fingering, and feeling." Pl. Mot. 9; *see* (Tr. 834-39). Additionally, Ms. Stanfill opined that Ms. Glenn "[m]ust lie down 4-6 hours out of an 8-hour day," and would "likely [] be absent from work more than 4 days per month as a result of her impairments or treatment." *Id.* However, the ALJ assigned Ms. Stanfill's opinion "limited weight" because it was inconsistent with the medical evidence and unsupported by the objective record. (Tr. 19).

Most significantly, the ALJ noted that "[a]lthough [Ms. Stanfill's] proposed exertional limitations are generally supported by the record, other limitations, such as a need to elevate her legs 80 percent of the time and no ability to perform any type of postural limitations have no correlating information in the medical records to support such limitations." *Id.* Moreover, substantial evidence elsewhere in the record, including the fact that "treatment notes over the past 2 years indicate that…[Ms. Glenn's] condition was considerably more stable," (Tr. 18), that compliance with her treatment "has helped in improving diabetes by the time of the hearing," *id.*, that despite her symptoms "she still maintained a good array of activities of daily living," *id.*, and that "[w]ith proper care, including her own compliance, she does better and should be capable of handling a range of sedentary work," (Tr. 19), further belies Ms. Stanfill's opinion. Thus, the ALJ did not simply reject Ms. Stanfill's opinion as an opinion from a non-acceptable source, but engaged in an appropriate analysis of the merits of her opinion in light of the other evidence of record. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Glenn's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990). In light of the evidence supporting the ALJ's conclusion here, remand on this basis is unwarranted.

    For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

    Sincerely yours,

    /s/

    Stephanie A. Gallagher
    United States Magistrate Judge